MINNIE SCHILL LANGE and MURIEL V. ANGELL, executrices of the last will and testament of JOSEPHINE V. KEAST, deceased, complainants,

*v.*

MINNIE SCHILL LANGE, individually, et al., defendants.

[Decided May 6th, 1940.]

*Mr. Edwin P. Longstreet,* for the complainants.

*Messrs. Durand, Ivins & Carton,* for the defendant Muriel V. Angell, individually.

*Mr. William A. Kirk,* for the defendant Lester A. Crone.

BERRY, V. C.

This bill seeks the construction of the last will of Josephine V. Keast, who died in Avon-by-the-Sea, Monmouth county,

New Jersey, on October 21st, 1937, and instructions to the executrices with respect to certain questions which have arisen in the course of their administration of the estate.

A statement of facts, accepted as true by the answering defendants, was filed in this cause by the solicitor of the complainants, from which it appears that at the time of her death Josephine V. Keast, who was also known as Josephine A. Keast, was the holder of two certain bonds and mortgages, one of which, by the third paragraph of her will, she bequeathed to a niece. Paragraph third of the will reads as follows:

"I give and bequeath to my niece, Muriel V. Angell, of Philadelphia, Pennsylvania, child of my deceased brother, Henry H. Vanderbilt, a certain bond and mortgage made by Aimee R. R. Collins and John L. Collins, her husband, to Charles L. Keast and Josephine A. Keast, his wife, dated May 29, 1922 and recorded in the Monmouth County Clerk's office in Book 629 of Mortgages, page 183, originally given to secure the sum of five thousand ($5,000) dollars, on which mortgage there is now due the principal sum of four thousand ($4,000) dollars, and in the event said balance of four thousand ($4,000) dollars now due on said bond and mortgage shall have been paid off or reduced during my lifetime, I then give and bequeath the amount paid off on the aforesaid balance of four thousand ($4,000) dollars now due on said bond and mortgage, or the full principal sum of four thousand ($4,000) dollars if it should be paid and satisfied, to my said niece, Muriel V. Angell."

The second paragraph of testatrix' will bequeaths an $8,000 mortgage, and a bond accompanying it, to two other nieces, share and share alike, with a similar provision that in the event that the bond and mortgage should be reduced or paid off during the lifetime of the testatrix, the two nieces would receive, share and share alike, the amount so paid off in addition to the mortgage, or the full principal sum, if the mortgage was paid in full.

By the seventh paragraph of her will, the testatrix devised and bequeathed the residue of her estate to her nieces and nephews, Minni Schill Lange, Anna Schill Winnie, Frederick V. Schill, Edmund H. Schill, Muriel V. Angell, Clifford M. Vanderbilt and Beverly H. Vanderbilt, to be divided equally amongst them.

On February 25th, 1937, sixteen months after the execution of her will, testatrix endorsed, as an accommodation endorser,

a $2,000 note made by her nephew, Edwin R. Keast, Jr., trading as Richards Novelty Company, payable to the Asbury Park National Bank and Trust Company. As collateral security for this note, testator assigned to the bank the bond and mortgage mentioned in the third paragraph of her will, which said assignment was recorded in the Monmouth county clerk's office.

Thereafter, on April 30th, 1937, testatrix again acted as an accommodation endorser for her nephew, endorsed his $1,200 note, payable to the bank, as before, and assigned the same bond and mortgage as collateral security, which assignment was also recorded as aforesaid. On October 14th, 1937, both these notes were combined in a new one, in the sum of $2,800, payable in two months, made by "Richards Novelty Co., Edwin R. Keast, Jr., Proprietor," and endorsed by testatrix as accommodation endorser. As collateral security for this note, testatrix assigned to the bank the same bond and mortgage, which assignment was likewise recorded in the Monmouth county clerk's office.

One week later, on October 21st, 1937, testatrix died and the Asbury Park National Bank and Trust Company, as holder of the $2,800 note, filed its claim against testatrix' estate for the sum of $2,800 plus interest, claiming it held as collateral security therefor the aforesaid bond and mortgage. Shortly thereafter, the bank entered judgment against Edwin R. Keast, trading as Richards Novelty Company, for $2,829 damages plus costs, which said judgment is still open and unsatisfied, although two interest payments from the maker of the mortgage in question have been received by the bank and applied by it on account of the amount due on the $2,800 note.

Subsequently, the executrices of testatrix' estate filed this bill for instructions as to how they should comply with the terms of the third paragraph of the will. The questions which have been raised are these:

1. Is Muriel V. Angell entitled to have the bond and mortgage thereby bequeathed to her exonerated from the payment of the $2,800 note held by the Asbury Park National Bank and Trust Company?

2. Is Muriel V. Angel entitled to the equity of said bond and mortgage after the aforesaid note and interest due thereon have been paid out of the principal sum of said bond and mortgage?

Should the answer to the first question be in the affirmative, it is obvious that the shares of each residuary legatee will be proportionately diminished and the defendant Lester A. Crone, who is the assignee of Beverly H. Vanderbilt and his wife of all their property and interest under the residuary clause of the testatrix' will, contends that Maurice V. Angell is not entitled to have her legacy exonerated from the payment of said note. On the other hand, the defendant Muriel V. Angell contends that the legacy given her by the third paragraph of the will above quoted is a specific legacy, a certain mortgage still in existence at testatrix' death; that the legacy was not adeemed by the various assignments to the Asbury Park National Bank and Trust Company as collateral security, and that such legacy is therefore subject to exoneration.

The cardinal rule of testamentary interpretation is to give effect, if possible, to the testator's intent if that intent can be determined from the whole will and the surrounding circumstances. My reading of testatrix' will in its entirety convinces me that testatrix intended practical equality amongst the legatees of her property. The first paragraph of her will contains the usual direction that all her just debts and funeral expenses be paid as soon as conveniently may be after her death. By the second paragraph testatrix bequeathed a certain particularly described $8,000 mortgage to her nieces, Minnie Schill Lange and Anna Schill Winnie, share and share alike, and by the third paragraph, concerning which this court's interpretation and instructions are sought in this proceeding, testatrix bequeathed a certain particularly described $4,000 mortgage to her niece Muriel V. Angell. The second and third paragraphs of the will each contained a provision that in the event the particular mortgage thereby disposed of should be reduced in principal, or entirely paid during the lifetime of the testatrix, then the respective legatees should receive, in addition to the particular mortgage, the amount

so paid off, or the whole principal sum, if the mortgage were fully paid.

By the fourth, fifth and sixth paragraphs of her will, testatrix bequeathed her "three-stone diamond ring" to niece Muriel V. Angell; her "diamond ear rings" to niece Minnie Schill Lange, and her "diamond solitaire ring and diamond breast pin" to niece Annie Schill Winnie; and by the seventh paragraph disposed of her residuary estate to her three nieces, already mentioned, and to her four nephews, by name, to be equally divided amongst them, share and share alike. These provisions clearly show that what testatrix intended was that there should be practical equality amongst her nieces, and amongst her nephews, respectively, separately classified. Each niece was to receive an equal share of the residuary estate, a specifically identified piece of jewelry, and, in effect, $4,000, and each nephew was to receive an equal share of the residuary estate.

The intention of the testatrix, so far as the effect and operation of her will is concerned, is considered as speaking as of the time of its execution and in the light of the situation then existing. *Gillespie* v. *Gillespie, 96 N. J. Eq. 501; Henderson* v. *Henderson, 77 N. J. Eq. 317; Gray* v. *Hattersley, 50 N. J. Eq. 206; 69 Corp. Jur. 129 § 1168.* Obviously, testatrix did not intend, at the time she executed her will, that the legacy created in paragraph three should be subjected to the lien of an indebtedness not yet created. The evidence touching the selection of this particular mortgage by an officer of the bank, from several offered by the testatrix, as collateral to the note which she endorsed, is persuasive that it was her intention to charge her general estate with her liability on the note rather than to charge it against any particular portion of such estate. It is clear, I think, that she intended to give her niece, Muriel V. Angell, a certain particularly described $4,000 mortgage, or in the event that said mortgage had been satisfied or reduced in principal, then testatrix intended to give $4,000 in cash, or an amount of money equal to the reduction in principal plus the mortgage itself. This is a specific legacy, in so far as the mortgage is concerned, and a contingent general legacy in so far as the payments of money are con-

cerned. It is a specific legacy because it is a testamentary gift of a particular part of the testatrix' estate which is identified and distinguished from all others of the same nature and which can be satisfied only by the delivery and receipt of the particular thing given. *In re Low, 103 N. J. Eq. 435; Kearns v. Kearns, 77 N. J. Eq. 453; Wyckoff v. Perrine's Executors, 37 N. J. Eq. 118; 69 Corp. Jur. 919-921; 28 R. C. L. tit. "Wills" 290 § 263.* It is a general legacy because it is payable, should certain events happen, out of the general assets of testatrix' estate. *In re Low, supra; 28 R. C. L. tit. "Wills" 290 § 264.* The events which testatrix thought might happen did not, in fact, happen, and at the time of her death the mortgage in question was still in the principal sum of $4,000.

The distinctive characteristic of a specific bequest is its liability to ademption. If the identical thing bequeathed is not in existence, or has been disposed of so that it does not form part of the testator's estate at the time of his death, the legacy is extinguished or adeemed and the legatee's rights are gone. *In re Low, supra; In re Cooper, 95 N. J. Eq. 210; Corp. Jur. 998, 999, §§ 2199-2200; 28 R. C. L. tit. "Wills" 345 § 341.* But the mortgage here bequeathed was not disposed of and was actually in existence at the time of the death of the testatrix, notwithstanding it had been assigned to the bank as collateral security for her nephew's note. The effect of the assignment of the mortgage was that of a pledge which did not deprive testatrix of all her interest in the mortgage debt. *Howell v. Bartlett, 124 N. J. Eq. 544, 551; Sulken v. United Holding Co., 14 N. J. Mis. R. 275; 184 Atl. Rep. 405.* Its assignment did not so alter its form as to indicate a change of testamentary purpose on the part of testatrix, and thereby work a complete ademption of the legacy.

Nor was there a partial ademption to the extent of the indebtedness represented by the $2,800 note, collateral to which is now held by the Asbury Park National Bank and Trust Company. *2 Jarman on Wills (5th ed.) 589.* There is no doubt but that the signature of the testatrix as accommodation endorser on her nephew's promissory note rendered her personally liable for payment of this indebtedness to a

holder for value should any default in its payment be made by the maker. *R. S. 7:2-29.* But this liability was a personal liability of the testatrix which became, upon her death, a liability of her estate, payable by her executrices. If this court should hold that the specific gift of the mortgage to Muriel V. Angell adeemed to the extent of this note, then it would result in a gift to testatrix' nephew of $2,800, the amount of the note, and the right to reimbursement from him which the executrices now have would be lost. Such a gift cannot be found within the four corners of the will.

*Jarman,* at the page above cited, states the common law rule that it is the right of a devisee of realty to be exonerated from an encumbrance to which the testator has subjected the devise, and goes on to say:

"And it is clear that the legatee of any chattel, specifically bequeathed, has the same right.  *  *  *

"If a testator bequeaths a watch or a painting, and it turns out that at his decease the watch or painting is in pawn, the legatee is entitled to have it redeemed. And by parity of reason if a testator specifically bequeaths a legacy to which he is entitled under a will, and afterwards assigns such legacy by way of mortgage, the legatee may claim to have the mortgage debt liquidated in exoneration of the subject of gift; and it would be immaterial that the mortgage deed contained a power of sale, by virtue of which the mortgagee might have absolutely disposed of the property and thereby have defeated the bequest; for in all these cases the mortgage being considered to have been created by the testator for his own convenience, and not for the purpose of subtracting so much from the bequest, the act is not, as between the parties claiming under the will, an ademption *pro tanto,* and cannot, without at least equal impropriety, be termed a partial revocation, though the latter designation has been commonly applied to it. If, therefore, the testator's right of redemption remain unbarred at his decease, the devisee or legatee is entitled to require that it shall be exercised for his benefit. And if the executor fails to perform this duty the legatee is entitled to compensation."

In this state, the exoneration of real estate so devised has been abolished *(P. L. 1924 p. 375; R. S. (1937) 3:26A-1),* but, by its own language, the statute applies only to real estate, therefore leaving the common law unchanged as to exoneration of personal property.

The complainants are advised that the defendant Muriel V. Angell is entitled to have her mortgage exonerated from

the payment of the obligation it secures, and that the mortgage be turned over to Muriel V. Angell by the complainants after the claim of Asbury Park National Bank and Trust Company has been satisfied out of the general funds of testatrix' estate. The legatee is, of course, entitled to all interest which has accrued on the mortgage since the death of the testatrix, and the complainants are entitled to reimbursement, in behalf of the estate, from the maker of the note.

I will advise a decree in accordance with this opinion.