18 N.J. Super. 223 (1952)
86 A.2d 815
BURLINGTON COUNTY TRUST COMPANY, SUBSTITUTED TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF MARIE BINNEY EARL, DECEASED, PLAINTIFF,
v.
ALEXANDER KINGSLAND AND ANNA BECADILLI DI BOLOGNA, PRINCESS DI CASTELCICALA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 20, 1952.
*226 Mr. Frank A. Mathews, Jr., attorney for the plaintiff.
Mr. John B. Mathews, guardian ad litem for Binney W. Earl, an incompetent.
*227 Mr. John D. McMaster, attorney for the defendant Alexander Kingsland.
Mr. Alexander C. Wood, 3rd, attorney for the defendant Anna Becadilli di Bologna, Princess di Castelcicala (Messrs. Richards, Capehart, Smith & Wood, attorneys).
HANEMAN, J.S.C.
This is a suit by a substituted trustee, seeking instructions concerning the will of Marie Binney Earl.
Marie Binney Earl died testate on November 22, 1929, and appointed her only child, Binney W. Earl, executor and trustee by her will. In 1930 he renounced as executor and in July of 1931 as trustee. The Burlington City Loan & Trust Company was duly appointed to succeed him, as administrator c.t.a., and the Camden Safe Deposit & Trust Company was appointed as substituted trustee but never qualified as such. In July of 1943 the Burlington County Trust Company, the plaintiff herein, was appointed substituted trustee, qualified as such, and has since been acting in that capacity.
In 1937 Binney W. Earl was declared mentally incompetent by inquisition issuing out of the former Court of Chancery of this State, and the plaintiff herein was appointed his general guardian. He has ever since been a patient in, and confined at, the Glenwood Sanitarium, Trenton, New Jersey.
At the time of the death of testatrix, her estate included a dwelling house situate in Edgewater Park, Burlington County, New Jersey, in which was located the personal property that now constitutes the trust res in question. Binney W. Earl was given a life estate in the said dwelling house and the personalty contained therein, and he and his wife, Maybelle Earl, resided therein until the time of Binney W. Earl's commitment as an incompetent. His said wife continued living in said dwelling after his commitment, until prevented from doing so by the result of proceedings, *228 instituted in 1938 and concluded in 1942, to foreclose a tax sale certificate on said premises by the remaindermen, who had purchased the tax sale certificate in order to protect their interests. Said tax sale certificate represented unpaid taxes for the year 1932, and its foreclosure made it necessary to find another place to store the personalty contained therein.
In 1939 the articles of personalty, the trust res, which had been left by the administrator c.t.a. in the possession of the life tenant, were stored in the safety vaults of the Burlington County Trust Company, at the request of some of the remaindermen and with the consent of the guardian of the life tenant. The said administrator c.t.a. filed its final account, which was approved by the Orphans' Court of Burlington County, and plaintiff was appointed substituted trustee under the will of the testatrix, and has been acting in that capacity since.
Florence Becadilli di Bologna, Princess di Camporeale, and Anna Becadilli di Bologna, Princess di Castelcicala, daughter of said Florence Becadilli di Bologna, Princess di Camporeale, and niece of testatrix, and a defendant herein, as well as Alexander Kingsland, another defendant herein, all remaindermen under the will, being Italian nationals, during the state of war occurring between that country and the United States of America the Alien Property Custodian of the United States became vested with title to said real estate, but has never become vested with any other interest of said Italian nationals in the estate of Marie Binney Earl.
In 1944, upon a sale by the said Alien Property Custodian of said premises to a third party, it became necessary for the guardian of Binney W. Earl to take such steps as were within his power to preserve and protect the articles of personalty. Thus the said personalty was in part stored in the Fidelity Twentieth Century Storage Warehouse Company, XXXX-XX-XX Market Street, Philadelphia, Pennsylvania, and the remainder was stored in the vaults of the Burlington County Trust Company at Moorestown, New Jersey, and *229 have been so stored since about July 3, 1944. The storage charges on both groups of said items are approximately $47.66 per month.
After the cessation of the said war, the guardian for Binney W. Earl, and counsel for the contingent remaindermen agreed to apply to this court for an order permitting them to sell the said trust res. Therefore, the case is before this court.
In this action, the plaintiff seeks the following advice and directions: (1) whether the testatrix intended the bequests of paragraph Sixth of her will to be specific or general legacies; (2) whether this court can permit the articles of the trust to be sold and the proceeds of such sale invested for the benefit of the life beneficiary and remaindermen; (3) whether the storage costs which have been paid thus far should be charged to either the life beneficiary or the remaindermen, or if to both, in what proportions, and (4) if the trust res can be sold, whether it should be done by the trustee or whether it is the exclusive function of the administrator c.t.a., who must be re-appointed to effect a sale of the same.
The said will here in question provides, in that portion with which we are now concerned, as follows:
"Sixth: All my oil paintings, engravings, family miniatures, silver and books of all kinds, and all the rest, residue and remainder of my property, real, personal and mixed, and wheresoever situate, I give, bequeath and devise to my dear son, Binney W. Earl, during the term of his natural life; immediately upon the decease of my said son, I give, devise and bequeath all the above-mentioned property to such child or children of my said son as may be living at the time of my death  if one, all the above-mentioned property; if more than one, all the above mentioned property in equal shares, share and share alike. If no child or children of my said son should be living at the time of his decease, then I give, devise and bequeath all the above-mentioned property to my great-nephew, Alexander Kingsland, son of my late beloved nephew, Captain Albert Alexander Kingsland, and to my niece, Anna Beccadelli di Bologna, Princess di Castelcicala, or her children; if she does not survive me, in the proportion of two-thirds to the above-named nephew and one-third to said niece. The nephew's portion to be held by my sister, Florence Beccadilli di Bologna, Princess *230 di Camporeale, if she be still living, until he reaches the age of twenty-one years. In case he does not attain that age, his portions to go to my niece, Princess di Castelcicala."
The first question for determination is whether the articles sought to be sold were specifically bequeathed.
Counsel for both plaintiff and defendants forcefully urge that the above provision is a general bequest, even as to the "oil paintings, engravings, family miniatures, silver and books of all kinds," because said designated articles of personalty are connected by the conjunctive "and" with "all the rest, residue and remainder of my property, real, personal and mixed." They further allege that because the testatrix provides for remaindermen, with proportional interests in said residue, it would be absurd to construe testatrix' intent so as to result in their having undivided interests in specific personalty.
A clear intention must appear before the courts hold a legacy to be specific, for it is the general disposition to regard a legacy as general or demonstrative if the will permits of such a construction. The question is, however, one of intention of the testator. Camden Trust Co. v. Cramer, 136 N.J. Eq. 261 (E. & A. 1945); In re Low, 103 N.J. Eq. 435 (Prerog. 1928); Zorner v. Foth, 124 N.J. Eq. 508 (Ch. 1938).
A general legacy is one which is payable out of the general assets of a testator's estate, such as a gift of money, or other thing in quantity, and not in any way separated or distinguished from other things of like kind. Camden Trust Co. v. Cramer, supra; In re Low, supra; Quill v. Schlichter, 121 N.J. Eq. 149 (Ch. 1936).
A specific legacy is a testamentary gift of a specific article or a particular part of a testator's estate which is identified and distinguished from all others of the same nature and which can be satisfied only by the delivery and receipt of the thing given. Lange v. Lange, 127 N.J. Eq. 315 (Ch. 1940); Quill v. Schlichter, supra; In re Low, supra.
*231 Partial or proportional interests may be created in personalty specifically bequeathed, and a provision for such partial or proportional interests does not, of itself, result in the creation of a general legacy. In re Low, supra.
A provision having the necessary features of a specific legacy may be coupled by the conjunctive with a general legacy of the residue and not lose its character as a specific legacy. Such a mode of expression does not demonstrate an intent to create a general legacy. Kearns v. Kearns, 77 N.J. Eq. 453 (Ch. 1910).
The contention of counsel that it would be absurd to construe testatrix' intent so as to create undivided remainder interests in the specific personalty is overcome by the evidence, which shows that the articles here being considered had a particular sentimental value, being family heirlooms, and therefore, testatrix desired that they remain in specie with her kin.
It is held, therefore, that insofar as the will provided for "oil paintings, engravings, family miniatures, silver and books of all kinds," a specific bequest was created, and that insofar as the will provided for the "rest, residue and remainder of my property," general bequests were created.
Thus, the next question is whether this court can direct that the said articles be sold, even though they are the subject of specific bequests.
In Lambertville National Bank v. Bumster, 141 N.J. Eq. 396 (Ch. 1948), Vice-Chancellor Jayne very aptly expressed the answer to the propounded question, as follows:
"I shall assume that the complainant in quest of the desired authorization invokes not only the inherent power of this court, but also the statutory jurisdiction conferred by R.S. 3:16-17 and 18, N.J.S.A.
Within the original inherent jurisdiction of the Court of Chancery abides its administrative and supervisory jurisdiction over the management and preservation of trusts. Indeed, this court may authorize and direct trustees to pursue a course or perform acts which they are not permitted to do under the terms of the trust."
"It is also qualified by the fundamental and salutary principle that in ordinary conditions and circumstances the trustee is obliged *232 to respect and comply with the terms of the trust. It is not the province of this court arbitrarily to thwart the expressed will of the creator of a trust and thereby to allow trustees experimentally to adventure and speculate in lively securities in expectation of either increased income or accretion of principal. Nor has the court in ordinary circumstances the right to clear the way for the substitution of its preferences to those of the settlor of the trust concerning the mode of investing. Hence, the inherent power of this court in which the complainant is presently interested may be legitimately described as a power which may only be exercised in situations of emergency and reasonable necessity, and then only for the preservation of the trust estate and the protection of the cestuis."
"Whether the requested authority should be conferred upon the trustee naturally depends upon the conditions exhibited by the application in the particular case. It is observed that in most instances the emergency has arisen from a change of circumstances probably unanticipated by the settlor of the trust."
"In all of such cases the basic object of the court is to prevent the failure or material impairment of the primary and rudimentary purpose for which the settlor created the trust. Although the settlor has expressly forbidden the course of action sought to be pursued, the judicial theory is that he would not have forbidden it but on the contrary would have authorized it, had he envisioned the eventual circumstances."
Although there is no express prohibition against the sale of the personalty specifically bequeathed, implicit in that specific bequest is an implied prohibition against such sale.
Upon the death of testatrix, as mentioned before, her estate included a dwelling house in which the subject personalty was housed. Since then the house has been sold for taxes and the life beneficiary has been declared an incompetent. This change of conditions has necessitated the storing of the trust res, and it is not unreasonable to infer that unless something be immediately done, the payment of the storage charges will deplete and may exhaust the remaining trust assets. Moreover, the life beneficiary, being an incompetent, certainly cannot presently enjoy the specifically bequeathed property, nor is it likely that his condition will ever permit him to so do.
The living remaindermen have joined in the request for a sale.
*233 There are here present such emergent and exigent circumstances, quite patently not anticipated or foreseen by the testatrix, as will probably result in serious and pointless loss or in a defeat of the underlying purposes of the trust. Under such facts, this court may by reason of both its inherent power and N.J.S. 3A:15-15 order a sale, contrary to the provisions of the trust.
In the interests of the preservation of this trust and the protection of both the life tenants and the remaindermen's interests, the plaintiff will be directed to sell the specifically bequeathed property and invest the proceeds of said sale in investments and securities which are by law permitted.
The next question is whether the life tenant or the contingent remaindermen should be charged with the costs of storage for the safekeeping of the trust res which have thus far accumulated.
This question presents a problem involving the relationship between a life tenant and remaindermen. The fact that the subject matter is personalty is insignificant and, moreover, the legal principles that control this relationship are normally the same whether the interests involved are legal or equitable. 31 C.J.S. 151.
A life tenant generally has the duty to keep the property in as good repair as when his estate began, not excepting ordinary wear and tear. This is so whether the property be realty or personalty. In re Roth, 139 N.J. Eq. 588 (Prerog. 1947). A life tenant incurs the obligation of trustee for the remaindermen. Laval v. Osterhout, 3 N.J. Super. 402 (Ch. 1949).
It is no answer to this duty to state that he has not had the enjoyment thereof. He accepted the bequest and enjoyed the same for some years. Either he or his guardian could have legally renounced his interest therein. This they have not done to date. He was under a duty to preserve the articles of personalty here involved, and even though his condition precluded his enjoyment of the same, the opportunity to enjoy remained. The preservation was not a voluntary *234 service for the sole benefit of the remaindermen. It was a legal duty. The life tenant will, therefore, be held for the payment of the storage charges.
The last question which this case raises is whether the trustee is the proper party to sell the subject matter of this trust. Since the administrator c.t.a. has finally accounted and transferred the title to the assets of the estate to the trustee, there is no logical reason that the latter should not conduct the sale. We are not here concerned with the original duty of the administrator c.t.a. in connection with the residue of the estate. Whether it should have reduced the residue to cash or not may or may not be a problem on a question of surcharges, but it is not of moment in connection with the directed sale. The trustee will be directed to conduct said sale.
Judgment will be entered accordingly.