IONA M. BUSCH, INDIVIDUALLY AND AS EXECUTRIX UNDER THE LAST WILL AND TESTAMENT OF LILLIAN W. SEIDEL, *ET ALS.*, PLAINTIFFS-RESPONDENTS, v. LOUISE PLEWS, DEFENDANT-APPELLANT, AND LIBERTY TITLE AND TRUST COMPANY, *ET ALS.*, DEFENDANTS-RESPONDENTS.

Argued April 20, 1953—Decided May 18, 1953.

*Mr. Wm. Elmer Brown, Jr.,* argued the cause for the appellant.

*Mr. Augustine A. Repetto* argued the cause for the respondents (*Messrs. Bolte and Repetto*, attorneys).

The opinion of the court was delivered by

JACOBS, J.   The defendant Louise Plews appeals, pursuant to certification granted by this court, from an adverse construction of the will of Gustavus C. Seidel, deceased.   See *Busch v. Plews*, 19 *N. J. Super.* 195 (*Ch. Div.* 1952), affirmed 21 *N. J. Super.* 588 (*App. Div.* 1952).

Mr. Seidel died on September 23, 1922 leaving a last will and testament which was duly probated.   The will directed that his debts be paid, devised and bequeathed his Atlantic City and St. Lucia, Florida, houses, their contents and other articles, to his wife Lillian W. Seidel, and in its third paragraph provided as follows:

"Third.   I give and bequeath to the Liberty Title and Trust Company, its successors and assigns the sum of Two Hundred and fifty thousand dollars in trust nevertheless for the following uses and purposes, namely; to invest and reinvest the same, changing said securities according to their best judgment and to collect the rents, issues and profits thereof and after the payment of necessary charges and expenses to pay the net income thereof quarterly to my wife Lillian W. Seidel, in quarterly instalments, for and during all the term of her natural life.   At and immediately upon the decease of my said wife Lillian W. Seidel I direct that the sum of One hundred and fifty thousand dollars shall be paid by my said Trustee to such person or persons and for such trusts as my said wife shall by her last will and testament direct and provide, and the remaining One hundred thousand dollars I direct shall go to and become a part of my residuary estate to be paid to and distributed among the same persons as are entitled to my said residuary estate under the provisions of this Will."

In the fourth paragraph the testator bequeathed $20,000 to the Liberty Title and Trust Company in trust to pay the income to his brother Robert for life and upon Robert's death to distribute to five named beneficiaries specified sums aggregating $20,000 "and to distribute the interest which may be on hand at the time of the death of my said brother to each of the above named beneficiaries in proportion to their bequest."   Various bequests which need not be detailed here were contained in ensuing paragraphs, a residuary

clause was embodied in the twentieth paragraph, and Lillian W. Seidel and the Liberty Title and Trust Company were named as executors in the twenty-first paragraph.

In 1923 the executors filed their final account, the trust provided for in the third paragraph was actually set up, and the general assets of the estate were distributed. The securities in the trust increased in value and a 1932 accounting disclosed a net *corpus* of $432,373.81. Thereafter the *corpus* lessened, the trustee was surcharged (see *Liberty Title & Trust Company v. Plews*, 6 *N. J.* 28 (1950)), and by order dated May 14, 1951 the Chancery Division adjudged that at least $348,446.70 was due the trust estate. During her lifetime Mrs. Seidel received the income on the entire trust fund. In 1944 she died leaving a will which exercised the power conferred upon her in the third paragraph of her deceased husband's will. She disposed of $57,200 to various designatees and the balance over which she had "the power of direction" to her niece plaintiff-respondent Iona M. Busch, as the surviving co-appointee. The plaintiff contends that under a proper construction of the power conferred in the third paragraph of Mr. Seidel's will she is entitled to three-fifths of the trust *corpus* and accrued income, and that the residuary legatees are entitled to two fifths of the *corpus* and accrued income. On the other hand the defendant Louise Plews, a residuary legatee, contends that plaintiff's interest is confined to $150,000 *corpus* plus interest from the death of Mrs. Seidel, and that the entire balance of the *corpus* and accrued income is payable to the residuary legatees. On this issue Judge Haneman sitting in the Chancery Division accepted the plaintiff's contention, and his opinion was adopted in the Appellate Division. See 19 *N. J. Super.* 195, 206; 21 *N. J. Super.* 588.

Judge Haneman discussed the nature of general, demonstrative and specific legacies, expressed the view that insofar as the remaindermen in the third paragraph were concerned there was "a specific bequest referring to a particular fund out of which their legacies must be satisfied" and concluded that they were entitled to increments to the trust

fund in the same proportion as their stated legacies. A general legacy is defined as a bequest of personal property payable out of the general assets of the testator's estate rather than from specific property included therein. *In re Low,* 103 *N. J. Eq.* 435, 437 (*Prerog.* 1928); *Clapp, Wills and Administration* (1950), § 157; 4 *Page, Wills* (3d ed. 1941), § 1393. A specific legacy is defined as a bequest of personal property *in specie* and not payable from other assets of the estate. *Camden Trust Co. v. Cramer,* 136 *N. J. Eq.* 261, 270 (*E. & A.* 1945). It may be all or part of the specified property or fund. *Clapp, supra,* § 156; *Page, supra,* § 1394. In the absence of provision to the contrary, specific legacies of property carry with them all accessions and accretions thereto after the testator's death. *Page, supra,* § 1599. However, since they are subject to ademption with consequent frustration of the testator's donative purpose, courts lean against construing legacies as specific. *Camden Trust Co. v. Cramer, supra.* A demonstrative legacy is defined as a bequest payable primarily out of specified property but chargeable against other assets of the estate if that property is insufficient; here again, for fear of defeating the testator's intention, courts lean towards construing legacies as demonstrative rather than specific. *Camden Trust Co. v. Cramer, supra; Page, supra,* § 1399.

It is clear that the $250,000 bequeathed under the third paragraph was payable from the general assets of the estate. But it is equally clear that the testator contemplated that that sum would be withdrawn from the general estate for investment by the trustee and that the trustee would set up and maintain a separate trust for the exclusive benefit of the life tenant and remaindermen *cestuis.* There are decisions which suggest that once such separate trust is properly set up it may be considered in the nature of a specific legacy within applicable rules relating to accessions and accretions. See *Re Boyer's Estate,* 174 *Pa.* 16, 34 *A.* 239 (*Sup. Ct.* 1896); *Re Mead's Estate,* 227 *Wis.* 311, 277 *N. W.* 694, 279 *N. W.* 18, 19, 116 *A. L. R.* 1127, 1145 (*Sup. Ct.* 1938); 57 *Am. Jur., Wills,* § 1616 (1948). In the *Mead* case the court

noted that the actual segregation of stock by executors in fulfillment of a trust entitled "the beneficiary to the accretions thereto from the date of the segregation when the election of the executors became operative, for the same reason that a bequest of stock as a specific legacy entitles the legatee to dividends therefrom from the date of the testator's death when the will becomes operative. 3 *Woerner, p.* 1572." In *Re Boyer's Estate, supra* [174 *Pa.* 16, 34 *A.* 240], the testator bequeathed $5,000 in trust to pay the income to Mary Axe for life and upon her death "the five thousand dollars of which Mary Axe receives the interest" shall be paid to the hospital of the Protestant Episcopal Church. The court held that upon the death of Mary Axe the hospital was entitled to the entire fund which then exceeded $5,000 stating: "It was a 'fund' that the testator referred to when speaking of 'the five thousand dollars,' and not of that particular sum. After it had once been separated from the principal of the estate, it vested in the two beneficiaries, who might suffer if it decreased or be benefited by its increase." See *Lister v. Hardin,* 76 *N. J. Eq.* 360 (*Ch.* 1909). In *Van Nest v. Van Nest,* 43 *N. J. Eq.* 126, 127 (*Ch.* 1887), the testator bequeathed $1,300 in trust to pay the income to Peter for life and upon Peter's death to pay $500 to Thomas and the "remaining eight hundred dollars" to others. Upon the death of Peter there was less than $1,300 in the trust fund and Thomas claimed that he was entitled to his $500 legacy in full. The court rejected the claim and held that the remaindermen must bear the deficit proportionately. In the course of its opinion the court quoted with approval from the somewhat comparable case of *Page v. Leapingwell,* 18 *Ves.* 463, 466, 34 *Eng. Rep.* 392, 393 (1812), where Sir William Grant, M. R. conceived "the true intention to have been that those persons should take as specific legatees, and therefore they must abate among themselves." See 2 *Jarman, Wills* (*8th ed.* 1951), 1027. But *cf. Clapp, supra,* § 156, notes 2, 36; § 157, *note* 1.

The appellant vigorously attacks the finding by the lower courts that the bequest of the remainder was specific.

but we are not particularly concerned with nomenclature. Courts today readily shed the tyranny of labels and justly strain to ascertain, and effectuate, if lawful, the overriding plan and purpose of the testator as gathered from the language of his entire will and the attendant circumstances. *In re Armour*, 11 *N. J.* 257, 269 (1953); *Litcher v. The Trust Co. of New Jersey*, 11 *N. J.* 64, 73 (1952). Mr. Seidel provided primarily and generously for his wife, for other designated beneficiaries, and for his nieces Louise Plews, Lillian and Vera Welzel as residuary legatees and devisees. After devising and bequeathing his houses, their contents and other articles to his wife, he bequeathed $250,000 to the Liberty Title and Trust Company "to invest and reinvest the same, changing said securities according to their best judgment" and to pay the net income to his wife for life. He was a man of considerable means and business experience and undoubtedly contemplated that the trust estate would set up expeditiously and thereafter stand on its own footing unrelated to his general estate, that the value of the securities in the trust *corpus* and the amount of net income might vary from time to time, and that his wife would receive during her lifetime, as she did, the entire income though the *corpus* was more or less than $250,000. Insofar as the remainder was concerned, it seems evident that the testator wished to divide it into two designated portions, one to be paid to appointees of his wife and the other to his nieces Louise Plews, Lillian and Vera Welzel, the residuary legatees. Thus, he provided that "One hundred and fifty thousand dollars" of the trust fund shall be paid his wife's appointees and the "remaining One hundred thousand dollars" shall be paid to the residuary legatees. At no point did he say that the "remainder" of the trust fund shall be paid to the residuary legatees, and as we view the actual language he used it is not significantly different than if he had said $100,000 shall be paid to his nieces Louise Plews, Lillian and Vera Welzel, the residuary legatees, and the remaining $150,000 to his wife's appointees. *Cf. Jarman, supra; Van Nest v. Van Nest, supra.*

Furthermore, we are entirely satisfied that although the testator used figures aggregating $250,000 as the trust fund, he contemplated disposition under paragraph three of the entire remainder whatever be its amount. When he provided for distribution of $150,000 and the remaining $100,-000 he was simply referring to portions of the $250,000 trust fund as originally invested by the trustee. In *Re Cruddas*, [1900] 1 *Ch.* 730, 735, a power of appointment over a fund of £30,000 was exercised by the will of Jane Maria Smith which bequeathed sums aggregating £24,000 and "another sum of £6000 (being the remainder of the said sum of £30,000)." The fund actually then amounted to £39,000 but Kekewich, J., held in the lower court that only £30,000 had effectively passed. This was reversed on appeal where the court held that the beneficiaries took the entire fund of £39,000 in the proportions of their bequests. In the course of his opinion Lindley, M. R. said that it was plain to his mind "that she was dealing with the £30,000 as an invested fund, and that she did not intend to leave any part of it unappointed." See *Re Boyer's Estate, supra*. Similarly, here Mr. Seidel knew that the $250,000 fund turned over to the trustee would be invested and perhaps reinvested in securities with fluctuating values which might aggregate more or less than the original fund. Nevertheless, he clearly desired that his wife's appointees and his residuary legatees share the entire trust *corpus* after his wife's death, and his specification of $150,000 to the wife's appointees and the remaining $100,000 to the residuary legatees displayed his intended apportionment.

We believe that the Chancery Division's commonsensical determination that three-fifths of the *corpus* and accrued income be paid to the wife's appointees and two-fifths of the *corpus* and accrued income be paid to the residuary legatees, justly awarded the increments to the remaindermen in accordance with their proportionate interests as equitable owners of the trust fund and effectuated the lawful intent of the testator as expressed in the third paragraph of his will. We reject the appellant's contention that

counter-intent is evidenced by the fourth paragraph of his will which provided for a $20,000 trust in favor of his brother for life, remainder to five other close relatives. He there stated that the "interest" on hand at the death of the life tenant shall be distributed to the remaindermen in proportion to their bequests. But as in the third paragraph, he made no express reference to increments to the *corpus* of the trust fund invested by the trustee and it is not to be assumed that his intention was other than the natural one of having the five remaindermen share in any *corpus* increments in proportion to their ownership interests in the remainder. See *Clapp, supra*, § 108, *p.* 253.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, JACOBS and BRENNAN—5.

*For reversal*—Justice BURLING—1.