155 N.J. Super. 575 (1978)
383 A.2d 135
IN THE MATTER OF THE ESTATE OF JOHN STEVENS, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1977.
Decided January 26, 1978.
*576 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. Gilbert D. Chamberlin argued the cause for the appellant Emily Stevens Tully (Messrs. Chamberlin & Hobbie, attorneys; Mr. Gilbert D. Chamberlin and Mr. Thomas J. Denitzio, Jr. on the brief).
Mrs. Dorothea O'C. Wefing argued the cause for respondent United California Bank, executor of the estate of Edwin A. Stevens, IV (Messrs. Schumann, Hession, Kennelly & Dorment, attorneys).
*577 No appearance for Messrs. Dickson & Creighton, attorneys for the executor of the estate of John Stevens.
No appearance for Mr. John J. Trombadore, guardian ad litem for William Leake Stevens.
The opinion of this court was delivered by PRESSLER, J.A.D.
By his will John Stevens, who died in 1932, created two trusts, each representing one-third of his residuary estate. The life tenants having now died, the constructional question before us is to determine to whom the corpus is to be distributed.
The trusts in question were created by paragraph Tenth of the will, which named testator's brother, Edwin A., as the life tenant of one trust and his sister, Emily L., as the life tenant of the other. The will further provided that upon the death of the first life tenant, if he should "leave no children or children of his children surviving him," the income from his trust be paid to the life tenant of the other trust. Distribution of the corpus of the two trusts was provided for as follows:
At the death of my brother Edwin A. and my sister, Emily L., neither leaving children or children of their children surviving, the principal of these two funds I give, devise and bequeath to the children of my brother, Basil M., their heirs and assigns forever.
At the time of testator's death, neither Edwin A. nor Emily L. had had children and both died without ever having had children, Edwin A. in 1954 and Emily L. in 1973. Basil M., who died in 1957, had two children, Emily Stevens Tully and Edwin A. Stevens IV, both of whom were teenagers when testator died and well known to him. Edwin A. Stevens IV died testate in 1958, leaving a widow and three children surviving. Emily Stevens Tully, his sister, survives. The question, then, is whether the gift over of the remainder to the class of Basil M's children vested in each of the children at the death of testator so that the one-half *578 interest therein of Edwin A. Stevens IV survived his death and descended to his executor. The surviving child, Emily Stevens Tully, claims all of the remainder to the exclusion of any interest in her deceased brother on the theory that there was no vesting at all until the death of both life tenants, an event only she survived. On motion and cross-motion for summary judgment made by testator's executor, the executor of the estate of Edwin A. Stevens IV, and Emily Stevens Tully, the trial judge entered judgment directing distribution of one-half of the remainder to Emily Stevens Tully and one-half to the executor of Edwin A. Stevens, IV.[1] Emily Stevens Tully appeals. We affirm.
The gift here was in the customary form of to A for life, remainder to A's children, and if A leaves no children surviving, remainder to B's children. Since, when testator died, A had no children but B did, the essential characteristic of the future interest then created was that while the identity of the presumptive takers of the remainder was then clearly ascertainable, those presumptive takers were uncertain of ever actually taking because of the possibility of the termination of their interest by reason of an intervening event which might or might not occur. The rule in this State and generally is that such an interest vests in the presumptive ultimate takers on testator's death. The effect of *579 the uncertainty of the event on the possibility of their actually taking was not to render the interest contingent but rather to result in a vesting subject to complete defeasance. Thus, if the uncertain event had not occurred as of the time the future interest becomes a present interest by reason of the termination of the prior life interests, the remainder interest would not have been defeated by the taker's failure himself to have survived, unless the will clearly required his survival. See, e.g., Fidelity Union Trust Co. v. Halsey, 136 N.J. Eq. 119 (Ch. Div. 1945); Brown v. Trenton, 140 N.J. Eq. 539 (Ch. Div. 1947). And see 2 Restatement, Property, § 157, Comments o., p and q. at 541-544, 554-557; § 164, Comments a., b. and d. at 606-609, 612-613, and § 165, Comment a. at 616-618 (1936).[2] See also, 6 N.J. Practice (Clapp, Wills and Administration), § 572 at 81-82 (1962), and 1977 supplement at 23. In the main text, Clapp questions the propriety of the "vested" characterization of B's interest where the limitation, as here, is "to A for life and then to his issue and if he die without issue, to B," and thus, inferentially, the soundness of the line of cases represented by Fidelity Union Trust Co. v. Halsey, supra. The supplement, however, makes clear that the vesting consequence of such a limitation is questionable only in respect of the application of the rule against perpetuities and not when the issue is, as here, whether the interest of such a nonsurviving taker descends. Thus the supplement notes that the Fidelity Trust Co. line of cases was "rightly decided" since
*580 * * * they determine that B's interest, if personalty, passes to his executor or administrator, and if realty, passes to his devisee or heir  even though B dies before the termination of the life estate and the occurrence of the event.[12.5] The point made in this text is simply one as to terminology. The word "vest" is being used in one sense in this context (i.e., with respect to the question as to whether the interest is transmissible on the taker's death to his personal or real representatives) and in another sense when the rule against perpetuities is involved ...
The explanatory footnote, relying on §§ 164 and 165 of the Restatement, Property, observes that "There is no question at all but that a future interest given to A contingent upon an event devolves upon A's executor or administrator or his devisees or heirs, in the event of his death before the occurrence of the contingency * * *."
It is further clear that the succession consequences of a remainder vested subject to complete defeasance are entirely unaffected by the fact that the remainder interest is, as here, in a class rather than in specifically named persons. It is well settled that a gift to a class otherwise vested by reason of the form of the limitation is vested in the class at the time of the testator's death so long as some members of the class are then in being. A share of the remainder interest thus "passes to each member of the class living at the time of the testator's death and to each member who comes into being thereafter up to the period of distribution; it matters not that he predeceases it." Clapp, op. cit., § 583 at 114. Nor does it matter, in terms of the vesting of a share in a member of the class, that the size of the share may be subject to diminution by the birth of additional members prior to the occurrence of the distributable event. In this regard, the remainder interest of the ultimate takers is not only vested subject to complete defeasance by reason of the form of the limitation, but among themselves, vested subject to open by reason of the class gift. See Restatement Property, § 157, Comments l., m., and n. at 551-554. And see, In re Estate of Ransom, 89 N.J. Super. 224 (App. Div. 1965).
*581 We are satisfied that the result reached here is mandated not only by the well-settled principles of the law of future interests but also by the doctrine of probable intent by which a court in searching out the testator's intent may consider the terms used in the will in light of circumstances outside the will. See, generally, In re Estate of Ericson, 74 N.J. 300 (1977); Engle v. Siegel, 74 N.J. 287 (1977); Wilson v. Flowers, 58 N.J. 250 (1977). The indications here, both in and outside the will, are strongly indicative of the conclusion that testator did not intend that his niece and nephew survive in order to take upon the termination of the life estates of his sister and brother. First, the limitation itself expressly required the survival of the issue of the brother and sister. No such requirement was imposed in respect of the niece and nephew. Nor was any alternate provision made in the event either should die before distribution. Nor is the condition of survivorship suggested by the strong vesting language of "give, devise and bequeath" and by the strong fee simple absolute language of "their heirs and assigns forever." Cf. Clapp, op. cit., § 574 at 92. Furthermore, as noted, the gift of the remainder was made at a time when this niece and nephew were teenagers and in close personal relationship with testator, who favored them both and, to all appearances, equally, over all of his other collateral descendants or potential collateral descendants. We note that the family tree shows that testator was one of seven children and his one predeceasing sibling left three children surviving. He had as well other nieces and nephews, both natural and adopted. In view of the circumstances, coupled with the language of the will itself, the trial judge concluded that testator did not intend to favor either one of the children of his brother Basil over the other or to exclude from the ultimate distribution the descendants of either of them. Cf. In re Estate of Benner, 152 N.J. Super. 435 (App. Div. 1977); Cody v. Fitzgerald, 2 N.J. 93 (1949). In brief, he found the probable intention of testator to be to do for each *582 of Basil's children what each would do for himself if he failed to survive. These findings and conclusions were well justified by the proofs.
Affirmed.
NOTES
[1] The widow and two adult children of Edwin A. Stevens, IV, did not contest the prior right of his executor or the executor's contention that Edwin A. Stevens, IV's interest in the remainder passed through his will rather than directly to his heirs through testator's will. That contention was, however, raised by the guardian ad litem for the minor child of Edwin A. Stevens in his pleadings but not apparently pressed, and the guardian ad litem does not appeal. We, in any event, agree with the trial judge that Edwin A. Stevens, IV's heirs did not take under testator's will, the reference therein to the heirs and assigns of the children of Basil M. having been correctly construed as words of limitation rather than substitution. See, generally, 1 Restatement, Property, § 27, Comment c. at 76 (1936). And see 6 N.J. Practice (Clapp, Wills and Administration) (3 ed. 1962), § 217 at 362.
[2] Sections 164 and 165 deal with the succession of future interests by descent and devise, respectively, the rules as to the former being generally applicable to the latter. Illustration 4 of § 165 is exactly analogous to the limitation here, providing as follows:

A, owning Blackacre in fee simple absolute, transfers Blackacre "to B as trustee for the benefit of C for life and if C is survived by issue then on the death of C, B is to convey Blackacre to such issue and their heirs, but if C is not survived by issue, then on the death of C, B is to convey Blackacre to D and his heirs." In the lifetime of C, D has a devisable interest in Blackacre.