657 A.2d 456

ESTATE OF BAIER LUSTGARTEN, PLAINTIFF–
RESPONDENT, v. DIRECTOR, DIVISION OF
TAXATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 11, 1995—Decided May 5, 1995.

Before Judges PRESSLER, LANDAU and CONLEY.

*Gail L. Menyuk,* Deputy Attorney General, argued the cause for appellant (*Deborah T. Poritz,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Ms. Menyuk,* on the brief).

*Marie E. Ramos–Wright* argued the cause for respondent (*Malsbury & Armenante,* attorneys; *Frank P. Armenante,* of counsel; *Ms. Ramos–Wright,* on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

The decedent Baier Lustgarten died at the age of 82 in 1990. A resident of New York State, he left an estate in excess of thirty-one million dollars, one of whose assets, located in New Jersey and valued at about six million dollars, is a nursery business and the extensive lands on which it is operated (New Jersey property). Concluding that under the term of the decedent's will the New Jersey property had been bequeathed and devised as a general legacy, defendant Director of the Division of Taxation assessed a transfer inheritance tax pursuant to the so-called ratio tax provision of *N.J.S.A.* 54:34–3. The Estate challenged the assessment by complaint filed in the Tax Court, urging that the legacy was specific and therefore exempt under the ratio tax law. On cross motions for summary judgment, Judge Dougherty agreed and entered judgment setting aside the assessment. The Director appeals, and we affirm.

█ The relevant facts are not in dispute. The decedent left surviving him his second wife, Elizabeth Lustgarten, then 76; two children of his own, David and Suzanne; and Elizabeth's four

sons, Kenneth, Howard and Gary Lustgarten and J. Paul Hoffman. His will made provision for his son by separate trust and bequeathed a substantial cash legacy to his daughter. A number of additional cash bequests were made to other relatives, employees and charities. The four stepsons were provided for by way of the disposition of the residuary estate, which constituted the bulk of the estate. It is that disposition that gives rise to the issue here raised.

In order to take full advantage of the federal estate tax marital exemption in the event Elizabeth survived the decedent, the entire and undifferentiated residuary estate was devised by way of a trust designed eligible for election by the executors as a qualified terminable interest in property pursuant to 26 *U.S.C.A.* § 2056(b) (QTIP trust). Accordingly, Elizabeth was designated as the sole life tenant of the trust. The named trustees, Kenneth Lustgarten and decedent's accountant Martin Starr, were required to pay to Elizabeth "all the net income of the trust in quarterly or more frequent installments as long as she shall live" and were accorded the power, to be exercised in their discretion, to invade the principal of the trust "to liberally provide for my wife's care, support and maintenance during her lifetime, after taking into account her other capital resources...." which were ample. The disposition of the residuary estate in the event Elizabeth failed to survive decedent and the disposition of the remainder following her death if she did survive him were identical. That disposition, made by Paragraph (D) of Article Fifteenth of the will is as follows:

(D) Upon the death of my wife after my death, I direct my Trustees to pay over or distribute the property of the trust as then constituted, or if my wife does not survive me, my Trustees upon my death shall divide and distribute all of the trust property as follows:

(1) To my wife's son, KENNETH LUSTGARTEN, all then existing real and personal property located in the State of New Jersey including, but not limited to, the nursery and real property located at Cream Ridge consisting of approximately seven hundred sixty (760) acres, together with the fixtures, vehicles, equipment, inventory, houses, stock and accounts receivable of the business, subject to any then existing outstanding bills and liabilities relating to such property.

(2) If KENNETH LUSTGARTEN shall predecease me, then my Trustees shall pay over and distribute the above described trust principal to his children who shall survive me, in equal shares per stirpes.

(3) To my daughter, SUZANNE, the sum of TWO HUNDRED FIFTY THOU-SAND ($250,000) dollars, or if she shall have predeceased me, to her children who shall survive me, in equal shares, per stirpes.

(4) The balance of the principal of the trust, after distribution as described in the above subparagraphs "(1)", "(2)" and "(3)" shall be divided among my wife's sons, J. PAUL HOFFMAN, HOWARD CARL LUSTGARTEN and GARY THOMAS LUSTGARTEN, or to the survivor of them, in equal shares, per capita.

The sole question raised by this appeal is whether the gift over to Kenneth Lustgarten of the New Jersey property was a legacy eligible for application of the ratio tax.

*N.J.S.A.* 54:34–3 imposes a transfer inheritance tax on the New Jersey property of a non-resident decedent. The technique for calculation of the tax is first to assume that the decedent had died a resident of this State and to calculate the New Jersey tax on the entire estate pursuant to *N.J.S.A.* 54:34–1, *et seq.*, taking into account the relationship of the beneficiary to the decedent for the purpose of determining, pursuant to *N.J.S.A.* 54:34–2, the taxability of the transfer and, if taxable, the rate. The tax so calculated is the hypothetical or base tax. Next, the total value of that portion of the estate located in New Jersey, irrespective of the identity of the beneficiary or beneficiaries thereof, is divided by the value of the entire estate. The percentage so produced is then multiplied by the hypothetical tax to produce the ratio tax.[1] *See generally Lansing, Raymond P., Est. of v. Taxation Div. Dir.*, 6 *N.J.Tax* 137 (Tax Ct.1983); *Herschberg v. Director, Division of Taxation*, 2 *N.J.Tax* 121 (Tax Ct.1981). *See also* Beck, *New Jersey Inheritance and Estate Taxes*, § 7–3 at 125–133 (1993). However, in

---

[1] Using this method, the Director calculated the ratio tax on this estate as $40,699.06. He did so on the basis that had decedent died a resident of New Jersey, only the legacies to the Class C beneficiaries, totalling $500,000, would have been subject to tax and that the tax thereon would have been $211,950, the so-called hypothetical tax. The value of the entire estate was $31,297,417, which he divided into the value of the New Jersey property, $6,009,791.75, producing a percentage of .192022. He then multiplied the hypothetical New Jersey tax by that percentage.

determining the value of the New Jersey property for purposes of calculating the percentage to apply to the hypothetical tax, *N.J.S.A.* 54:34–3 provides that specific bequests and devises shall not be included. That exclusion underlies the policy and purpose of the ratio tax, which, as summarized by *Lansing, supra,* 6 *N.J.Tax* at 142, was intended to ensure

> that the assets of an estate of a non-resident decedent may not be manipulated to avoid the payment of taxes by applying property in this state not specifically devised or bequeathed to the payment of exempt legacies and by applying the property outside the state to the payment of non-exempt legacies[.]

Thus

> [t]he ratio tax provided for in the present statute *N.J.S.A.* 54:34–3, is directed at post-mortem manipulation of a non-resident decedent's estate accomplished by matching New Jersey property with exempt legatees or devisees and non-New Jersey property with non-exempt legatees or devisees resulting in the avoidance of New Jersey inheritance taxes on the transfer of New Jersey property. [*Ibid.*]

Since the defining characteristic of a specific legacy is that specifically identified property must pass in kind to a specifically identified beneficiary, such a legacy precludes the possibility of the post-mortem manipulation the ratio tax is intended to prevent. That, obviously, is why specific bequests are exempted from the tax calculation. And that observation returns us to the issue before us, namely, whether the gift of the New Jersey property to Kenneth Lustgarten was general, as the Director contends, or whether it was specific, as the Estate contends.[2]

Well-settled principles governing will construction and the nature of future interests persuade us that the gift of the New Jersey property constituted a specific legacy. In sum, we con-

---

[2] We reject the Director's alternative suggestion that if the gift was not general, then it was demonstrative. Quite simply, the gift to Kenneth patently lacks the characteristics of a demonstrative legacy which is "a bequest of money or other personal property to be satisfied primarily out of a fund or any other property, real or personal, which is sufficiently identified as to have constituted a specific gift to the legatee, had it been given him; ... [and] if the fund or property fails, the bequest is to be satisfied from the general estate." 5A Alfred C. Clapp, *New Jersey Practice (Wills and Administration)*, § 251 at 74 (3d ed. rev. 1982). The gift to Kenneth was not to be satisfied out of the New Jersey property. It was the New Jersey property.

clude that the proper way to define the disputed testamentary disposition is to view the successive interests as a gift to the stepson Kenneth of the vested remainder interest in a specific legacy subject to the life interest therein of the widow and further subject to defeasance by the possibility of the exercise of the power to invade corpus during her lifetime.

We start our analysis by considering the character of the gift of the New Jersey property as if the residuary estate had passed directly to the remaindermen free of any trust, as indeed was provided for by the will in the event the widow had not survived the decedent. We think it plain, and the Director does not argue to the contrary, that in that case, at the very least, the expressly included nursery and 760 acres of real property located at Cream Ridge together with the business and all its appurtenances, would have constituted a specific legacy to Kenneth. First, that gift patently identified a particular and distinguishable asset of the testator's estate, it was so identified by him in his will, and the gift could have been satisfied only by delivery of that asset. *See generally Busch v. Plews*, 12 *N.J.* 352, 355–356, 96 *A.*2d 761 (1953); *Burlington County Trust Co. v. Kingsland*, 18 *N.J.Super.* 223, 86 *A.*2d 815 (Ch.Div.1952); *Lansing, supra*, 6 *N.J.Tax* 137; 5A Clapp, *Wills and Administration, supra*, § 249 at 64.

Second, it appears that the legacy would have adeemed had it not been extant at the time of the testator's death, since the entire balance of the residuary estate was expressly devised, in specific amounts or proportions, to others, making it difficult to understand how Kenneth could have otherwise shared in it. *See* Clapp, *supra*, § 249 at 64, noting that "[a]n unfailing test of a specific legacy" is whether or not it is subject to ademption. Moreover, it is well settled that the devise of the residuary estate may include both specific and general legacies, and that a "provision having the necessary features of a specific legacy may be coupled by the conjunctive with the general legacy of the residue and not lose its character as a specific legacy." *Burlington County Trust Co., supra*, 18 *N.J.Super.* at 231, 86 *A.*2d 815. Thus, even if the

broadly described legacy of "all then existing real and personal property located in the State of New Jersey" were deemed to be ambiguous in respect of its general or specific character, the specifically described "included" property, the only New Jersey property left by the decedent, is unquestionably a specific gift. *See Johnson v. Poulson,* 32 *N.J.Eq.* 390 (E. & A.1880) (a legacy of "all the rest and residue of my property, including the farm on which I now live" constitutes a specific gift of the farm). *See also* Clapp, *supra,* at 65; Annotation, *Effect of Designation of Particular Property in Residuary Clause of a Will,* 128 *A.L.R.* 822, 835–842 (1940), supplemented by Annotation, 72 *A.L.R.*2d 1170, 1183–1189 (1960).

Perhaps most significant, however, is the undisputed proof of the decedent's intent that the specifically described New Jersey property pass to Kenneth and his heirs. It is well recognized that in the end, the ultimate determinant of whether a testamentary gift is a specific or general legacy is the testator's intent. *See, e.g., Busch v. Plews, supra; Lansing, supra;* Clapp, *supra,* § 249. This principle accords with the general principle that in construing the terms of a will, "the court's task is always to determine the intent of the testator." *Engle v. Siegel,* 74 *N.J.* 287, 290, 377 *A.*2d 892 (1977). There can be no genuine question here that the decedent intended Kenneth to have the nursery business and described real estate. Not only is that clear from the manner in which the remainder interests in the residuary estate were distributed among the beneficiaries, but also from the affidavits of the widow, Kenneth and the co-trustee, Martin Starr, submitted by the Estate in support of its summary judgment motion. In sum, Kenneth had worked with decedent in the nursery business for some years, decedent hoped to retain it in the family, and had frequently and publicly announced his intention that it would pass to Kenneth upon his death.

The remaining question then is whether the form of the gift of the New Jersey property to Kenneth, that is, a vested remainder interest rather than a present fee interest, defeats what would

otherwise have clearly been a specific legacy. The Director argues that we must so conclude because the gift appeared to be, initially at least, part of the undifferentiated *res* of the residuary trust and because, as to Kenneth, the gift was contingent. We are satisfied, however, that both of these arguments are based on a misunderstanding of the nature of the gift. It is true that it was not specifically described as going into the residuary trust. But there is also no question that the decedent regarded it quite differently from all of the other considerable property going into the trust. That is, all the other property went in generally and will come out generally. Nothing but the New Jersey property was intended to be ultimately distributed in kind. Reading the trust provision as a whole, therefore, we are satisfied that as to that portion of the residuary estate, Kenneth was the vested remainderman subject to the widow's life interest in that specific property. In other words, since that was the clear intent and import of the gift, we read the residuary clause as if it had expressly and in such terms left to the residuary trust the New Jersey property as described in the gift of the remainder and all other remaining property of the decedent.

With respect to the asserted contingent nature of the gift, we simply note that a gift of the remainder is not contingent if the remainderman is ascertainable at the time of the testator's death. As we explained in *In re Estate of Stevens,* 155 *N.J.Super.* 575, 578–579, 383 *A.*2d 135 (App.Div.1978), if the identity of the presumptive taker is clearly ascertainable at the time of the creation of the future interest, the remainder interest vests in that presumptive taker at that time even if there is an uncertainty of his "ever actually taking because of the possibility of the termination of [his] interest by reason of an intervening event which might or might not occur.... The effect of the uncertainty of the event on the possibility of ... actually taking was not to render the interest contingent but rather to result in a vesting subject to complete defeasance." This principle accords with the *Restatement* view.

*See Restatement (First) of Property* § 157(c), comment p, explaining that

> When a remainder is vested subject to complete defeasance it is possible to point to a person and to say that such person would take, if all interests including a prior right to a present interest should now end.

*See also Simes and Smith, Future Interests,* § 151 at 167–170 (2d ed. 1956).

Thus, the power to invade corpus on which the Director relies in characterizing Kenneth's remainder interest as "contingent" is nothing of the sort. It is only a subsequent event that could result in defeasance, and is, indeed exactly the same kind of event resulting in defeasance set forth in Illustration 14 on comment p of § 157 of the *Restatement.*[3] Moreover, it is unlikely in the extreme, and certainly the decedent himself did not anticipate, that the power to invade corpus, if exercised at all, would ever be exercised to diminish the New Jersey property. First, if the remainder interest is a specific legacy, as we have held that it is, it would appear that the balance of the trust *res* would first have to be resorted to. Beyond that, Kenneth is one of the two trustees. It is unlikely that he would elect to invade corpus by disposing of the New Jersey property. Moreover, it is clear from this record that the widow has substantial means and hence that any invasion for her benefit during her remaining lifetime is unlikely. In sum, the evident scheme of this will to preserve the family nursery business and its real property in Kenneth's hands and those of his own heirs despite the widow's prior life interest therein appears assured of ultimate fruition. Under these circumstances, we cannot conclude that the postponement of Kenneth's enjoyment resulting from the prior life estate has any capacity to alter the essential character of the gift as a specific legacy.

---

[3] The example given is a gift of securities in trust for C for life, remainder to D with the power in the trustee to sell all or any of them for the benefit of C. The *Restatement* concludes that "D has a remainder vested subject to complete defeasance." *Restatement, supra,* at 556.

Courts of other states have construed similar devises as specific bequests albeit in different contexts. Thus in *In re Stevens' Estate*, 95 *F.Supp.* 694 (D.D.C.1951) [4] the will, as here, had devised the undifferentiated residuary estate to the testator's widow. His widow was given a present interest for life or until her remarriage. Markedly similar to the gift here, the remainder was devised as follows: the testator's business and the real property on which it stood to A and B, one-third of the remaining balance to C, one-third to a charity and one-third to a class of stepchildren. Although in that case the issue involved the consequences of the widow's renunciation, the court described the remainder interest of A and B as "specific legacies notwithstanding the fact that the language creating these legacies was contained in the residuary clause." 95 *F.Supp.* at 695. And in *In re Estate of Rice*, 406 *So.*2d 469, 475 (Fla.Dist.Ct.App.1981), involving a QTIP trust with a power to invade corpus for the benefit of the widow, the court held, as to the decedent's bank stock placed in trust with the remainder over to his brother, that a reading of the will as a whole in the light of the testator's expressed intent left "no doubt that the testator intended to devise the bank stock as a specific bequest in trust for his brother, Jack, subject to the prior beneficial life estate in his surviving wife, Caroline." So here.

Based on the foregoing, we are satisfied that the only property in New Jersey left by the decedent was the subject of a specific legacy. Accordingly, there is no property subject to the ratio tax.

Because we have concluded that the ratio tax does not apply to any portion of this estate, we do not consider the constitutional challenge to the tax raised by the Estate.

The judgment appealed from is affirmed.

---

[4] The operative provisions of the will there construed are recited in *Mayhew v. Atkinson*, 93 *F.Supp.* 753 (D.D.C.1950)