[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The American Yacht Harbor Associates Limited Partnership (AYH) is a limited partnership formed by the defendant, Freyer, and others in April 1986. AYH was created to purchase and develop real estate in St. Thomas, U.S. Virgin Islands. AYH secured financing from Barclays Bank PLC in November 1988, and began construction on a retail complex and marina in the U.S. Virgin Islands in June 1989.
In September 1989, Hurricane Hugo hit the Virgin Islands. Due to the hurricane, AYH's original financial needs changed. In November 1992, Barclays Bank PLC refinanced AYH's project for $15,000,000.00. One of the conditions of this refinancing was that the defendant, Freyer, would execute a guaranty in favor of Barclays Bank PLC, which he did. At that time, Freyer owned a controlling interest in AYH's general partner, Freyer Capital Management. Answer, p. 2. On May 17, 1995, Barclays Bank PLC assigned its interest in the loan and the guaranty to the plaintiff, Barclays Business Credit, Inc. AYH did not complete the project. "AYH is presently the subject of an involuntary proceeding under Chapter 7 of the United States Bankruptcy Code, CT Page 5749 captioned In Re: American Yacht Harbor Associates LimitedPartnership, Case No. 395-00025 (Bank. D.V.I.)." Complaint, ¶ 10.
The plaintiff, Barclays Business Credit, Inc., brought this debt collection action against the defendant, Freyer, by a two count complaint, and Freyer filed an answer, three special defenses, and a six count counterclaim. The plaintiff successfully moved to strike the defendant's entire counterclaim and Freyer has appealed that decision.
The plaintiff has filed this motion for summary judgment, accompanied by an affidavit of Michael C. Rodgers, Vice President of Barclays Business Credit Inc. which contains five exhibits: the promissory note evidencing the $15,000,000.00 loan to AYH from Barclays Bank PLC, the guaranty signed by Freyer, the assignment of interest from Barclays Bank PLC to the plaintiff, a formal written demand letter from Barclays Bank PLC to Freyer, and an order from the U.S. Bankruptcy Court for the District of the Virgin Islands.
 A Motion For Summary Judgment
Practice Book § 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384. "The party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Bourquin v.Melsungen, 40 Conn. App. 302, 670 A.2d 1322, cert. denied,237 Conn. 909, 657 A.2d 456 (1996). "`Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. . . ." (Citations omitted.) Bank ofBoston v. Scott Real Estate, 40 Conn. App. 616, 619-20,673 A.2d 558, cert. denied, 237 Conn. 912, 675 A.2d 884 (1996).
B CT Page 5750
Choice of Law
The guaranty provides that it is to be "governed by and construed in accordance with the laws of the U.S. Virgin Islands." Affidavit of Michael C. Rodgers, Exhibit B, ¶ 14. "[P]arties to a contract generally are allowed to select the law that will govern their contract, unless either: `(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [of the Restatement (Second) of Conflict of Laws (1971)], would be the state of the applicable law in the absence of an effective choice of law by the parties.'" Elgar v. Elgar, 238 Conn. 839, 850,679 A.2d 937 (1996). Neither party has contested the choice of law provision, therefore, the court will interpret the guaranty according to the laws of the U.S. Virgin Islands. Virgin Islands statutory law provides that the common law rules expressed in the Restatement are to be relied upon, absent contravening statutes or case law of the Virgin Islands. See V.I. Code Ann. tit. 1, § 4 (1995).
 C Bankruptcy Motion To Strike Appeal And Lack of Discovery
Freyer raises several preliminary issues as to why a decision on this motion for summary judgment should be delayed. All of these arguments are immaterial and will not delay this court's decision on the plaintiff's motion for summary judgment.
First, Freyer suggests that this motion cannot be decided now because "the amount of such claimed indebtedness is itself the subject of litigation in the United States Bankruptcy Court for the District of the Virgin Islands." Defendant's Memorandum of Law In Opposition To Motion For Summary Judgment, p. 8. The outcome of that case will only bear upon the amount of debt involved, if at all, and will have no effect on liability in the present case. Therefore, this motion for summary judgment can still be decided on the issue of liability and a hearing in damages, if any, will then have to await the outcome of the bankruptcy proceeding. See Practice Book § 385. CT Page 5751
Freyer's second contention is that the appeal of the plaintiff's previous motion to strike warrants a delay in deciding this motion for summary judgment. The defendant attempts to justify this delay by arguing that his stricken counterclaims are inextricably tied to his special defenses. The defendant's counterclaims are immaterial to his liability for the debt at issue in this case. Therefore, the pending appeal will not delay the decision on the motion for summary judgment currently before this court.
The last preliminary argument raised by Freyer is that a decision on this motion for summary judgment should await the beginning of significant discovery. Under Practice Book § 382, a court may deny a motion for summary judgment "[s]hould it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present facts essential to justify his opposition." This section requires an affidavit from the party opposing summary judgment. No such affidavit has been filed by Freyer.[1] Furthermore, in his memorandum, Freyer offers no reason why discovery has not yet begun. The defendant merely states that "[a]t this point in the action, the parties have engaged in motion practice but have yet to engage in discovery." Defendant's Memorandum of Law In Opposition To Motion For Summary Judgment, p. 11. Therefore, the lack of discovery is an improper basis on which to deny the motion for summary judgment.
 D Special Defenses
In order to be consistent with the Restatement (Third) of Suretyship and Guaranty (1996), it is important to note the following: the plaintiff, Barclays Business Credit, Inc., is the obligee; AYH is the primary obligor; and the defendant, Freyer, is the secondary obligor.
Freyer raised three special defenses as to why the guaranty should not be enforced: impairment of collateral, estoppel, and economic duress. The defense of impairment of collateral stems from the conditions placed upon the loan by Barclays Bank PLC that it be allowed to dictate whom AYH would hire for certain jobs on the remainder of the project. The defense of estoppel is based upon abandoned attempts at renegotiating the loan agreement between AYH and the plaintiff. The economic duress defense deals with CT Page 5752 another condition of the loan, that the defendant, Freyer, sign a guaranty. The plaintiff counters these arguments by seeking to enforce the waiver of defenses clause contained in paragraph five of the guaranty signed by Freyer. See Affidavit of Michael C. Rodgers, Exhibit B, ¶ 5.
Under § 48 of the Restatement (Third) of Suretyship and Guaranty, a waiver in a guaranty waives those defenses for actions of the obligee directed against the secondary obligor's surety status that would otherwise, absent the waiver, discharge the secondary obligation. "Surety status gives the secondary obligor both the right to have the principal obligor bear the cost of performance owed to the obligee and several mechanisms of recourse against the principal obligor to effectuate that right." Restatement (Third), Suretyship and Guaranty § 37, comment (a) (1996). The special defense of impairment of collateral comes within the category of actions against the secondary obligor's surety status that may be waived under § 48. If the waiver clause is valid, Freyer has waived his right to assert the defense of impairment of collateral.
Section 34 of the Restatement (Third) of Suretyship and Guaranty states that the secondary obligor can assert any defenses that the primary obligor could have rightfully asserted against the obligee. These defenses are for harms directed against AYH, the primary obligor. Freyer's special defense of estoppel falls within this category. Comment (a) to § 34 of the Restatement (Third) of Suretyship and Guaranty states that "the secondary obligor is free to contract to be liable on the secondary obligation even when the principal obligor has a defense to the underlying obligation." The waiver in the guaranty waives "any defense arising by reason of any disability or other defense of Borrowers or of any guarantor of the indebtedness of Borrowers, including any Guarantor hereunder, or by reason of the cessation or unenforceability of the liability of Borrowers or of any such grantor from any cause whatsoever." (Emphasis added.) Affidavit of Michael C. Rodgers, Exhibit B, ¶ 5. This statement specifically waives the defendant's ability to assert defenses for harms against the primary obligor. Again, if the waiver in the guaranty agreement is valid, the defendant's special defense of estoppel must fail.
Freyer's defense for duress directed against AYH falls within the same category as impairment of collateral. As such, it will fail provided the waiver clause is valid. Duress directed directly against Freyer implicates the validity of the waiver clause and is CT Page 5753 dealt with below.
 E Waiver Clause
The issue before the court is whether the waiver clause in the guaranty is valid and enforceable. The guaranty is a contract, and the "rules concerning unconscionability place limits on the parties' freedom to contract, and rules concerning good faith and fair dealing place limits on the parties' freedom to act within the confines of the contract." Restatement (Third), Suretyship and Guaranty § 48, comment (a) (1996). Therefore, the only applicable defenses to the waiver clause are those that go to the enforcement of the guaranty contract. Those defenses are lack of voluntary assent, violation of public policy, ambiguity, and duress directed against Freyer.
The defendant claims that the waiver clause should not be enforced because he had no choice in signing the contract, and therefore he neither negotiated nor read the contract. The lack of choice implicates the issue of duress, which will be discussed below. Taking as true the defendant's assertion that he had no opportunity to negotiate this contract implicates the ambiguity issue. This involves contract interpretation, which will also be discussed below. Lastly, the defendant's assertion that he did not read the contract is not an excuse. He manifested his assent to the contract by signing it. See 1 Restatement (Second), Contracts § 23, comment (b) (1981) ("Thus where an offer is contained in a writing either the offeror or the offeree may, without reading the writing, manifest assent to it and bind himself without knowing its terms."); see also 1 Restatement (Second), Contracts § 84, comment (b) (1981) ("`Waiver' is often inexactly defined as `the voluntary relinquishment of a known right.'").
Freyer also argues that the waiver clause should not be enforced because it violates public policy. The public policy allegedly violated consists of allowing a party to profit from its intentional wrongdoings. Neither party has cited any Virgin Islands case law or statutory law dealing with the validity of such a waiver. Accordingly, Virgin Islands statutory laws directs this court to look to the Restatement to resolve this issue.[2] Section 195 of volume 2 of the Restatement of Contracts Second precludes a waiver exempting a party from tort liability for his intentional or reckless acts. See 2 Restatement (Second), Contracts § 178, p. 6-7 CT Page 5754 (1981). However, the waiver in question deals with contract law, not tort law. Therefore, this section does not preclude enforcement of the waiver.
Furthermore, enforcing the waiver clause comports with the public policy of freedom to contract espoused in § 6 of the Restatement (Third) of Suretyship and Guaranty. As stated previously, that section explains that "[e]ach rule in this Restatement stating the effect of suretyship status may be varied by contract between the parties subject to it." Restatement (Third), Suretyship and Guaranty § 6, p. 29 (1996). This freedom is limited, however, by the "general doctrines of contract law such as good faith and unconscionability that protect against overreaching and abuse." Restatement (Third), Suretyship and Guaranty § 6, comment (b) (1996). The waiver clause does not violate public policy.
Freyer's third argument against enforcing the waiver clause is based upon the claim that its terms are ambiguous. The defendant correctly points out that a contract must be interpreted against the drafter. 2 Restatement (Second), Contracts § 206, p. 105 (1981). However, there is no ambiguity in this waiver clause. Freyer claims that the term "any defenses" in the waiver clause is ambiguous because it is not clear which defenses are being waived. The defendant argues that the waiver clause may be interpreted as referring only to those defenses that existed at the time of execution or all defenses, including future wrongdoing. The term "any defenses" unambiguously waives any defenses, whether they stem from acts committed before, after, or during the execution of the contract. The clause need not enumerate every defense which is being waived. See Restatement (Third), Suretyship and Guaranty § 48, comment (d) (1996). The waiver clause is not ambiguous.
Freyer's final argument against enforcement of the waiver clause is that the guaranty itself was obtained through duress. "The secondary obligation, as a contract, may . . . be voidable in . . . situations that result in the voidability of a contract. Such . . . situations resulting in voidable contracts include . . . those in which the contract was induced by mistake or duress." Restatement (Third), Suretyship and Guaranty § 12, comment (k) (1996). There are two types of duress discussed in the Restatement (Second) of Contracts: duress caused by physical compulsion; see 1 Restatement (Second), Contracts § 174, p. 474 (1981); and duress caused by threat. See 1 Restatement (Second), Contracts § 175, p. 475-76 (1981). Freyer is asserting the defense of duress caused by CT Page 5755 threat.
Section 175 of volume 1 of the Restatement (Second) of Contracts states that a contract is voidable due to duress when "a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative." The defendant has not alleged, in his special defenses, that he had no reasonable alternative to signing the guaranty. There is no evidence that AYH had to get its financing exclusively from Barclays Bank PLC. Freyer has not shown any reason why AYH could not have gone elsewhere for financing. As such, this defense fails as a matter of law. See Bank of Boston v. Scott Real Estate,
supra, 40 Conn. App. 619-20 ("a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue.").
The affidavit by Michael C. Rodgers and the documentary evidence included therein demonstrate that plaintiff's predecessor in interest made a loan to AYH which was guaranteed by the defendant and that debt remains unpaid. The evidence also establishes that there is no genuine issue as to any material fact and the plaintiff is entitled to judgment on the debt as a matter of law. Freyer has not substantiated any of his defenses against enforcement of this debt. Accordingly, the plaintiff's motion for summary judgment is granted as to liability.
D'ANDREA, J.